# CASES

## IN THE

# SUPREME JUDICIAL COURT

### IN

## THE COUNTY OF YORK, APRIL TERM, 1832.

---

### STAPLES *vs.* BRADBURY *& al.*

A father conveyed his farm to his son, reserving a life estate to himself; and taking from the son a bond to pay all his father's debts, support him during his life, furnish him with a horse, oxen and farming tools to use at his pleasure ; to deliver and account for to the father, on demand, certain enumerated neat cattle and sheep belonging to the father, or others as good as those. The son thenceforth had the chief management of the farm and property for about three years, when the father died ; soon after which the son sold the stock as his own. Hereupon it was held ;—

That if the son was attorney to the father, his authority was not coupled with an interest ;—or, if it was, yet by its terms it was to be executed only in his lifetime ;—and in either case it ceased at the death of the father :—

That placing the property thus under the apparent ownership of the son, did not estop the father or his representatives from showing the true nature of the authority :—

And that as no title passed to the son's vendee, the administrator of the father might lawfully take the stock into his own possession, to be administered with the other assets.

THIS was an action of trespass for taking and carrying away a yoke of oxen and three cows, the property of the plaintiff ; who

claimed them under a bill of sale from *Joseph Bradbury* to himself, dated *April* 22, 1829. The defendants took the cattle from the plaintiff by order of the administrator on the estate of *Jabez Bradbury*, the father of *Joseph*. The question was whether the cattle belonged to the intestate's estate, or not. It appeared that the father, *June* 29, 1826, conveyed his farm to his son *Joseph*, reserving a life estate therein to himself ; and that the son at the same time gave a bond to his father, conditioned to pay all the father's debts ; to support him during life in a decent and comfortable manner, providing him with a horse and chaise, a yoke of oxen and farming tools to use at his pleasure ; and to deliver and account for to the father, on demand, certain enumerated neat stock and sheep belonging to the father, or other stock as good. The son thenceforth managed the farm and stock, and, with the father's consent, exchanged some of the cattle, and conducted the business of the father as his agent, the latter declaring that after his death *Joseph* would have all that was on the farm. About two months after his father's death he sold to the plaintiff the property in question being part of the cattle enumerated in the bond.

The Chief Justice, before whom the action was tried, was requested by the counsel for the plaintiff to instruct the jury that the bond constituted a power of attorney to the son to sell any of the property for which he therein engaged to account ; that this authority was coupled with an interest, and so was not terminated by the father's death ; and that if the cattle were ostensibly the property of *Joseph*, and so much so as that the plaintiff might fairly presume them to be his, and this with the knowledge or by the act of the father, they ought to find for the plaintiff. These instructions the Chief Justice declined to give ; and informed them that the authority of the son expired at the death of his father. Whereupon they returned a verdict for the defendants ; which was taken subject to the opinion of the Court upon the question whether the desired instructions ought to have been given.

*D. Goodenow* and *Fairfield*, for the plaintiff, contended *first*, that *Joseph* had sufficient authority from the father, by the terms of the bond of *June* 1826, to dispose of the cattle. The only obligation

on his part in such case was to furnish " others as good." *Secondly,* that this authority was coupled with an interest, and so did not expire at the death of the father. The legal operation of the transaction was a gift of the property to the son, reserving to the donor the privilege of employing the cattle of the donee in his own service. *Hunt v. Rousmaniere,* 8 *Wheat.* 204 ; *Hunt v. Ennis,* 2 *Mason,* 250 ; *Bergen v. Bennett,* 1 *Caines's Cas.* 1.—*Thirdly,* that the father having suffered *Joseph* to treat the property as his own, and having enabled him to make a legal sale without employing any other name than his own as vendor, is now bound by his acts. *Buffinton v. Gerrish,* 15 *Mass.* 158 ; *Hussey v. Thornton,* 4 *Mass.* 407 ; *Thurston v. McKown,* 6 *Mass.* 428 ; *Dana v. Newhall,* 13 *Mass.* 498 ; *Schimmelpenninck v. Bayard,* 1 *Pet.* 290 ; *Pickering v. Busk,* 15 *East.* 42.

*J. & E. Shepley,* for the defendants.

MELLEN C. J. delivered the opinion of the Court, at the ensuing *June* term in *Kennebec.*

On the trial of this cause, it appears by the report of the Judge, the principal, and indeed the only question was whether the cattle taken by the defendants were the property of *Jabez Bradbury* at the time of his death, or of his son *Joseph,* under whom the plaintiff claims title. This being a question of fact, all the evidence relating to the point was left to the jury, who by their verdict have decided that *Joseph* the son was not the owner of the cattle at the time of the sale, which was *April* 22, 1829. It appears by the bill of sale that he undertook to sell the cattle in his own right and as his own property. *Jabez Bradbury,* the father, died, one or two months before the bill of sale was given. There must be judgment on the verdict, if the Judge's instructions were correct, and the requested instructions were properly refused.

The first instruction was surely correct. If the son was the agent of the father and had power to make bargains on his account, and sell or exchange his cattle, still that authority was at an end as soon as the father died, which was prior to the sale to the plaintiff. We are of opinion that the requested instruction as to the legal im-

port of the bond from *Joseph* to *Jabez*. was properly declined. There is not in any part of the condition an authority given by the father to the son, in terms, to sell and dispose of any of his property. The condition recites a conveyance of the father's farm to *Joseph*, and his agreement to maintain him ; speaks of the stock on the farm as the father's, and contains an agreement to deliver and account to him for it on demand, when he should need the same, or other oxen, cows and sheep as good as those then belonging to the father. The only expression contained in the bond, which is relied on as showing a power, coupled with an interest, is that by which the son was authorised to deliver other cattle and sheep as good as those on the farm. But if this gave a power to sell, and substitute other cattle or sheep in the room of those sold, the substitutes were to be delivered to the father ; of course, the power, if coupled with an interest, was, by the express terms of the condition, to be executed in the life time of the father ; but as this was not done, they were the property of the father when he died ; and, as well as his other property, were legally subjected to the control of the administratrix ; and on this ground the sale by *Joseph* to the plaintiff conveyed nothing.

The last instruction requested was, that if by the act or knowledge of the father, the cattle had been placed in such a situation as ostensibly to be the property of *Joseph*, and so that the plaintiff might fairly presume it to be his, the jury should find for the plaintiff. We also think this instruction was properly denied. Surely, because the owner of cattle or any other personal property, leases it to his neighbor, who goes into possession, that neighbor has no right to dispose of it ; we are not to allow property to be thus changed. The question is not did the cattle appear to be the property of *Joseph* when he gave the bill of sale, but were they then his property ? The jury have decided that they were not. A multitude of cases in Massachusetts and in this State have settled the law, that such possession by one, who is not the owner, may always be explained, to repel the charge of fraud or to vindicate and protect the rights of the true owner. There must be

*Judgment on the Verdict.*